O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CENTURY SURETY COMPANY,          ) Case No. CV 09-06085 DDP (JEMx)
                                 )
                Plaintiff,       ) **Order Dismissing Plaintiff's**
                                 ) **Claim for Declaratory Relief**
        v.                       )
                                 ) [Motion filed on December 3,
J QUINN CONSTRUCTION,            ) 2009]
                                 )
                Defendant.       )
_____ )

     Presently before the Court is Defendant J. Quinn Construction
("Quinn")'s motion to dismiss for lack of subject matter
jurisdiction, or in the alternative, for judgment on the pleadings.
Having reviewed the parties' moving papers, and the arguments
advanced therein, the Court abstains from exercising jurisdiction
over this case.

**I.   Background**

     Christopher and Michele Crocker ("Crockers") own a home
located in Palos Verdes Estates.  (Compl. ¶ 6.)  John and Kathryn
McLaughlin ("McLaughlins") own a home adjacent to the Crocker home.
(Id.)  In March 2008, the Crockers undertook a renovation project,
adding a second story and a subterranean garage to their home.

1   (Id. ¶ 7.)   The Crockers hired John Simich Construction ("Simich")

2   to act as the general contractor for the renovation project and

3   hired Quinn to install a swimming pool.  (Id.)

4       On March 2, 2009, the McLaughlins filed a complaint against

5   the Crockers and Simich in Los Angeles County Superior Court, case

6   No. YC059196 ("State Action").  (Id. ¶ 8.)   The complaint in the

7   State Action alleges that, as the Crockers' renovation project

8   progressed, the construction activity jarred and shook the

9   McLaughlin home, causing it to subside, settle, and lose its

10  lateral and subjacent support.  (Id.)   The McLaughlins allege that

11  the instability resulted in cracks in their driveway, front porch,

12  pool area, rear patio, kitchen, bedrooms, living room, and office

13  room.  (Id.)   The complaint pleads causes of action for negligence,

14  removal of lateral support, nuisance, and trespass. (Id.)

15      On May 19, 2009, Simich cross-claimed against Quinn.  (Id. ¶

16  9.)  The crosscomplaint alleges that Quinn negligently performed

17  its work, causing damage to the McLaughlin home, and pleads causes

18  of action for negligence, comparative indemnity and apportionment

19  of fault, declaratory relief, and total equitable indemnity.  (Id.)

20      Plaintiff Century Surety ("Century") issued a Swimming Pool

21  Contractors Commercial General Liability Policy ("Policy") to

22  Quinn.  (Id. ¶ 10.)  The Policy provides a limit of $1,000,000 per

23  occurrence and $2,000,000 in the aggregate, subject to a $2,500 per

24  claim deductible.  (Mayer First Decl. ¶ 6.)  Quinn tendered defense

25  of Simich's cross-claim to Century.  (Id.) Century accepted Quinn's

26  defense pursuant to a reservation of rights, including the right to

27  recoup defense costs.  (Compl., Ex. D.)

28

1    Century brought the present action for declaratory relief,
2    pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201,
3    on August 20, 2009.  It seeks a declaration that the Policy
4    excludes coverage for the property damage at issue in the State
5    Action.  Specifically, Plaintiff contends that two of the Policy's
6    exclusions relieve it of any duty to indemnify Quinn for damage it
7    may have caused to the McLaughlin home.

8    First, Plaintiff notes that the Policy does not cover "'bodily
9    injury' or 'property damage,' which would not have occurred in
10   whole or part but for the 'subsidence of land,' including
11   'subsidence of land' caused in whole or in part by the operations
12   of any insured or any subcontractor(s)."  (Compl. ¶ 11.)  The
13   Policy defines the term "subsidence of land" as "movement of earth
14   or land, including movement to a higher or lower level, landslide,
15   mud flow, mudslide, or the rising, settling, shifting or sinking of
16   earth."  (Id.)  Next, Plaintiff relies on the Policy's exclusion of
17   coverage for damage caused by "[t]he transportation of 'mobile
18   equipment' by an 'auto' owned or operated by or rented or loaned to
19   any insured."  (Id.)

20   Quinn, for its part, contends that federal subject matter
21   jurisdiction is lacking, and alternatively, that this Court should
22   exercise its discretion to abstain from ruling on Century's
23   affirmative claims pending resolution of the underlying State
24   Action.

25   **II.  Subject Matter Jurisdiction**

26   The Court begins its analysis with Quinn's contention that
27   Century has failed to establish subject matter jurisdiction.  If
28   subject matter jurisdiction is lacking, then the Court is powerless

1  to consider the merits of the abstention issues raised in Quinn's

2  motion.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83,

3  94-95 (1998).

4      A.   Legal Standard

5      A district court has diversity jurisdiction over any civil

6  action between citizens of different states as long as the amount

7  in controversy exceeds $75,000, excluding interest and costs.  28

8  U.S.C. § 1332.  In actions brought in federal court in which the

9  plaintiff has filed a complaint alleging, in good faith, damages in

10 excess of $75,000, it "must appear to a legal certainty that the

11 claim is really for less than the jurisdictional amount to justify

12 dismissal."  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S.

13 283, 288-89 (1938).  In cases where a defendant removes a case from

14 state to federal court, and the plaintiff challenges jurisdiction,

15 however, the standard is different.  See Lowdermilk v. U.S. Bank

16 Nat'l Ass'n, 479 F.3d 994 (9th Cir. 2007) ("[W]hen the plaintiff

17 fails to plead a specific amount of damages, the defendant seeking

18 removal 'must prove by a preponderance of the evidence that the

19 amount in controversy requirement has been met.'" (quoting Abrego

20 Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006) (per

21 curiam))).

22     The Ninth Circuit has not addressed the applicable legal

23 standard for ascertaining the amount-in-controversy in actions for

24 declaratory relief where, as is the case here, the amount in

25 controversy is based on an underlying action in state court.  Other

26 circuits, however, have recognized that such actions are analogous

27 to removal from state to federal court.  See, e.g., St. Paul

28 Reinsurance Co. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998)

("Although most of our caselaw regarding § 1332's amount in controversy requirement has arisen in the context of removal from state to federal court, we find the procedures developed in those cases to be instructive in the converse context of declaratory judgment actions . . . ."); accord Fed. Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 n.1 (11th Cir. 2003); see generally Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 540-43 (7th Cir. 2006) (treating a liability insurer's federal court action seeking a declaratory judgment of no duty to defend or indemnify insured in an underlying state action as legally indistinguishable from removal).

In light of the analogical relationship linking actions for declaratory relief – at least in cases where a pending state court action is at issue – to removal from state to federal court, the Court looks to Ninth Circuit law governing removal procedures for guidance. "[W]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," and a defendant removes to federal court on the basis of diversity jurisdiction, courts in this circuit apply a "preponderance of the evidence" standard. Guglielmo v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007). The standard is applied as follows, "the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional amount]. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).

1        Accordingly, Century, the Plaintiff in this case (and the

2   analogue of a removing defendant), must provide "competent proof,"

3   id. (quoting McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178,

4   189 (1936)), establishing that it is more likely than not that the

5   amount in controversy in this matter satisfies the requirements of

6   § 1332.

7        B.    Analysis

8        Quinn contends that Century has failed to establish that the

9   amount in controversy in this diversity case exceeds the $75,000

10  jurisdictional threshold. See 28 U.S.C. § 1332.  The Court issued

11  an Order to Show Cause ("OSC") on September 18, 2009, noting that

12  Century's complaint did not allege specific facts in support of its

13  contention that more than $75,000 was in controversy.  (Dkt. No.

14  5.)  Century filed a response to the Court's OSC on September 28,

15  2009.  (Dkt. No. 6.)  In its response, Century reported that

16  litigation costs associated with defending Quinn in the State

17  Action would likely exceed $75,000.[1]  Further, Century argued, if

18  it is obligated to indemnify Quinn for the damage it allegedly

19  caused to the McLaughlin home, then it would likely be responsible

20  for paying a damages award in excess of $75,000.

21       "In actions seeking declaratory or injunctive relief, it is

22  well established that the amount in controversy is measured by the

23  value of the object of the litigation."  Hunt v. Wash. State Apple

24  Adver. Comm'n, 432 U.S. 333, 347 (1977).  In an action for

25  declaratory relief concerning liability coverage for a particular

26  _____

27       [1]    Century provided a declaration from Daniel Mayer, a
28  claims attorney overseeing Quinn's defense the State Action, to
    corroborate its estimation of likely litigation costs.

occurrence at issue, "the amount in controversy is the value of the underlying potential tort action." See Budget Rent-A-Car, Inc. v. Higashiguchi, 109 F.3d 1471, 1473 (9th Cir. 1997); accord Hartford Ins. Group v. Lou-Con Inc., 293 F.3d 908, 911 (5th Cir. 2002) ("[I]n declaratory judgment cases that involve the applicability of an insurance policy to a particular occurrence, the jurisdictional amount in controversy is measured by the value of the underlying claim." (citations and internal quotation marks omitted)).

Neither the McLaughlins' complaint nor Simich's crosscomplaint states the precise amount of damages sought, and Century provides no facts to support its contention that damages, assuming a finding of liability, would exceed $75,000.[2]  Instead, Century relies in large part on evidence suggesting that, absent a declaration of no duty to indemnify, it will likely be forced to spend more than $75,000 defending Quinn in the State Action.

Whether, in the context of an action seeking declaratory relief, the value of an insurance company's obligation to defend an underlying lawsuit should be figured into the amount in controversy calculation appears to be an open question in the Ninth Circuit. Several circuits have held that such costs are jurisdictionally relevant.  See, e.g., Williamson v. Aetna Life Ins. Co., 481 F.3d 369, 376 (6th Cir. 2007); Farmers Ins. Co. v. McClain, 603 F.2d 821, 823 (10th Cir. 1979) (stating that insurer's potential losses can include the value of its obligation to defend its insured in an

---

[2]     The civil cover sheet filed along with the McLaughlins' complaint states that the amount of damages sought exceeds $25,000 – the minimum for an "Unlimited Jurisdiction" case in California Superior Court.  The complaint does not, however, specify the precise amount sought.

1   underlying suit); <u>Stonewall Ins. Co. v. Lopez</u>, 544 F.2d 198, 199

2   (5th Cir. 1976) (concluding that the amount in controversy in an

3   action for declaratory relief included the "pecuniary value of the

4   obligation to defend a separate lawsuit").  The district courts to

5   have addressed the issue are in accord.  <u>E.g.</u>, <u>Grange Mut. Cas. Co.</u>

6   <u>v. Safeco Ins. Co. of Am.</u>, 565 F. Supp. 2d 779, 784 (E.D. Ky.

7   2008); <u>Clarendon Am. Ins. Co. v. Miami River Club, Inc.</u>, 417 F.

8   Supp. 2d 1309, 1316 (S.D. Fla. 2006); <u>Owners Ins. Co. v. James</u>, 295

9   F. Supp. 2d 1354, 1359 (N.D. Ga. 2003).

10       The Court agrees with Century, and the other courts to have

11  addressed the issue, that the value of an insurance company's

12  obligation to defend an insured in an underlying suit is a relevant

13  measure of the amount in controversy in an action for declaratory

14  relief.  If Century were to obtain a declaration from this Court

15  stating that it is under no duty to indemnify Quinn, than it would

16  be spared the expense of litigating the State Action, and

17  presumably, it could recoup the litigation expenses it has already

18  absorbed.  In sum, the Court is persuaded that Century's defense

19  obligation is at issue in this litigation, and accordingly, the

20  value of that obligation must be figured into the amount-in-

21  controversy calculus.

22       According to the declaration of Daniel Mayer – the attorney

23  Century has tasked with overseeing defense of the State Action – it

24  will cost Century between $70,000 and $90,000 to defend Quinn.

25  (Mayer First Decl. ¶ 11.)  He bases his estimate on: (1) previous

26  experience; (2) the fact that litigating the State Action will

27  require Quinn's defense counsel to retain at least two experts,

28  including a geotechnical engineer and a construction contractor;

1   and (3) a dispute between Century and Quinn that has led Century to

2   hire its own attorney to associate in with Quinn's chosen counsel.

3   (Id. ¶¶ 10-11.)   In a second declaration, attached to Century's

4   memorandum in opposition to Quinn's motion to dismiss, Mayer states

5   that he recently "received a litigation budget from defense counsel

6   [in the State Action] setting forth counsel's estimate of the cost

7   to defend the underlying action.   The estimate does not include

8   trial preparation, or post-trial appellate work.   Counsel's

9   estimate totals $76,975."[3]   (Mayer Second Decl. ¶ 3.)

10      In light of the evidence presented in Mayer's first

11   declaration (which Quinn does not contravert), the Court concludes

12   that Century has proven, by a preponderance of the evidence, that

13   its accumulated and likely future costs in litigating the State

14   Action on behalf of Quinn will exceed $75,000.   Accordingly, the

15   Court has subject matter jurisdiction over this case.

16   **III. Abstention**

17      Quinn next contends that, in light of the pendency of the

18   State Action, the Court should abstain from exercising jurisdiction

19   over Century's declaratory judgment action.

20      The exercise of jurisdiction under the Federal Declaratory

21   Judgment Act, 28 U.S.C. § 2201(a), is committed to the sound

22   discretion of the federal district courts.   See, e.g., Wilton v.

23   Seven Falls Co., 515 U.S. 277, 282-83 (1995); Gov't Employees Ins.

24

25      [3]   Quinn objects that this estimate lacks a proper
     foundation, and that it is hearsay without any exception.
26   (Objection in Support of Mot. at 2.)   The Court agrees that the
     reference to the litigation budget appears to be inadmissable
27   hearsay.   Accordingly, the Court does not rely on the $76,975
     estimate in reaching its conclusion that Century has established
28   that it is more likely than not that its litigation costs will
     exceed $75,000.

1   <u>Co. v. Dizol</u>, 133 F.3d 1220, 1223 (9th Cir. 1998) (en banc).   In

2   exercising that discretion, "[a] district court should [1] avoid

3   needless determination of state law issues; [2] it should

4   discourage litigants from filing declaratory actions as a means of

5   forum shopping; and [3] it should avoid duplicative litigation."

6   <u>Huth v. Hartford Ins. Co. of the Midwest</u>, 298 F.3d 800, 803 (9th

7   Cir. 2002).   "Gratuitous interference with the orderly and

8   comprehensive disposition of a state court litigation should be

9   avoided."   <u>Brillhart v. Excess Ins. Co. of Am.</u>, 315 U.S. 491, 495

10   (1942).

11       The Court concludes that the balance of the relevant

12   considerations weighs in favor abstention.

13       First, construing the scope of the subsidence exclusion, as

14   Plaintiff invites the Court to do, could result in the needless

15   determination of complex questions of state law.   The insurer

16   contends that the term subsidence, as it is used in the Policy,

17   reaches all forms of property damage alleged in the McLaughlins'

18   complaint.   The complaint, however, pleads more than one theory of

19   causation.   It alleges, in relevant part, that

20       In or about March 2008, Plaintiffs observed damage to
        Plaintiffs' Property as the result of their property being
21       violently jarred and shaken by the vibratory machinery and
        heavy construction equipment and/or machinery operated by
22       Defendants . . . on the Crocker Property.   Plaintiffs are
        also informed and believe and based thereon allege that the
23       extractive demolition, grading, and/or excavation on the
        Crocker Property has caused Plaintiffs' Property to subside,
24       settle, lose its lateral and subjacent support, and undermine
        the stability of Plaintiffs' Property.
25

26   (Compl. Ex. A, 3:9-12.)   The complaint further contends that the

27   damage to the McLaughlin home includes "cracks to the dirveway,

28

front porch, pool area, rear patio, kitchen, bedrooms, living room, and office of Plaintiffs' residence." (<u>Id.</u> 3:15-17.)

Thus, the complaint appears to allege that damage occurred as a result of removal of lateral support (i.e., subsidence), and that intense vibrations emanating from construction equipment caused direct damage.  It is possible that one damage theory will emerge as the correct one during fact discovery, or alternatively, that subsidence and direct sound wave vibrations will be deemed joint causes of the damage to the McLaughlin home.  It is also possible that a new theory of property damage causation – one not pled in the initial complaint – will emerge in the course of the litigation.

The important point for the Court's purposes here, is that construing the contours of the Policy's coverage exclusions could lead the Court to confront a matrix of complex state insurance law questions before it is clear that those questions require resolution.  The state court proceeding will address Quinn's liability, if any, and develop a factual record reflecting the manner in which any damage to the McLaughlin home occurred.  Thus, abstention will ensure that any future dispute over the scope of the Policy's coverage will go forward with the benefit of a developed factual record.

Further, the Court notes that the state court trying the underlying action could, in the interests of judicial economy, present the jury with a special interrogatory concerning the precise cause of any property damage to the McLaughlin home.  Doing so would reduce the likelihood of future, duplicative litigation on

1   that issue, and enable Century and Quinn to reach a prompt

2   resolution of their dispute after the State Action's conclusion.

3        In sum, the Court concludes that abstention will avoid

4   "needless determination of state law issues," and reduce the

5   potential for duplicative litigation down the road.  Dizol, 133

6   F.3d at 1223.  Accordingly, the Court exercises its discretion to

7   abstain from hearing Century's claim for declaratory relief.[4]

8        In concluding that abstention is warranted, the Court does not

9   reach the merits of Century's affirmative claims.  Accordingly, the

10  Court dismisses this case without prejudice to Century renewing its

11  legal arguments concerning the scope of its indemnity obligations

12  in a future proceeding.

13  **IV.  Conclusion**

14       For the reasons set forth above, the Court abstains from

15  exercising jurisdiction over this matter.  Accordingly, the case is

16  DISMISSED without prejudice.  The Court orders Quinn to provide a

17  copy of this Order to the judge presiding over the underlying state

18  court action, and to do so within ten (10) days.

19

20  IT IS SO ORDERED.

21

22  Dated: January 20, 2010

                                          DEAN D. PREGERSON
23                                        United States District Judge

24

25

26       [4]   The Court notes that it detects no indication that
    Century brought the present action "as a means of forum shopping."
27  Dizol, 133 F.3d at 1223.  Nonetheless, the other two relevant
    factors – needless determination of state law issues and avoiding
28  duplicative litigation – weigh in favor of abstention.